IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARPENTERS HEALTH AND | : | CIVIL ACTION |
| WELFARE FUND OF | : | |
| PHILADELPHIA, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| KIA ENTERPRISES INC. | : | NO. 09-116 |

MEMORANDUM

McLaughlin, J.                                          July 15, 2009

        The plaintiffs in this action are several union funds
and multi-employer pension plans and two individuals, all
affiliated with the United Brotherhood of Carpenters and Joiners
of America (the "Carpenter's Union").  The plaintiffs are suing
defendant Kia Enterprises Inc. ("Kia") to collect payments
allegedly owed to them under a collective bargaining agreement
and related trust agreements (collectively the "CBA").  Kia,
which is an African-American-owned business, filed a
counterclaim, naming as defendants all plaintiffs except the
individuals and alleging that, in seeking to collect the payments
allegedly owed by Kia, the plaintiffs have violated the Civil
Rights Act of 1866, 42 U.S.C. § 1981.

        The plaintiffs moved to dismiss the counterclaim.  The
Court granted their motion on April 8, 2009, finding that the
allegations of the counterclaim failed to satisfy the pleading
requirements of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127
S. Ct. 1955 (2007).  The Court's dismissal, however, was without

prejudice.  Kia has now filed an amended counterclaim and the plaintiffs have again moved to dismiss.  Upon consideration of the parties' arguments, the Court finds that the defendant has again failed to plead facts sufficient to satisfy Twombly and will dismiss the amended counterclaim.

Kia's amended counterclaim alleges that Kia is a minority-owned business, owned and operated by an African American.  Am. Answ. ¶ 45.  It contends that the plaintiffs, in pursuing their claim that KIA had violated its duty to make payments under the CBA, acted "in furtherance of and pursuant to their long-standing pattern and practice of discriminating and retaliating against Minority Business Enterprises and minority members" of the Carpenter's Union, particularly African-American businesses and Union members.  Am. Answ. ¶ 48.  The amended counterclaim alleges a longstanding "historical and present day antipathy" for minorities and minority-owned businesses on the part of the Carpenter's Union.  As an example, the amended counterclaim alleges that the Carpenter's Union failed to cooperate with the Philadelphia Mayor's Advisory Commission on Construction Industry Diversity, which was investigating and analyzing minority participation in the Philadelphia construction industry.  Am. Answ. ¶ 51.

The amended counterclaim alleges three specific discriminatory actions by the plaintiffs.  It alleges that the

-2-

plaintiffs "submitt[ed] a formal demand for payment to Liberty Mutual Insurance Company as the first step in submitting an unsubstantiated claim against KIA's Performance Bond No. 019-025-018." It alleges that the plaintiffs "pressur[ed] the School Reform Commission of the City of Philadelphia ("SRC") to refuse to timely pay KIA monies owed to KIA . . . based on the Carpenter[']s Union's statement that KIA had violated its obligation to make required benefits contributions on SRC-KIA contracts," and that, on information and belief, the plaintiffs did not similarly pressure the SRC with respect to non-minority-owned businesses that owe the plaintiffs money. Am. Answ. ¶ 45. The amended counterclaim also alleges that the plaintiffs discriminated against Kia by demanding to review all Kia's books and records, including those that have no relation to work covered by the CBA, and that the plaintiffs made similar unjustified demands of another minority-owned company, W & W Contractors, Inc. ("W & W"), but on information and belief, do not make similar demands of non-minority-owned businesses. Am. Answ. ¶ 50.

The plaintiffs allege that all of these actions were motivated by "a desire to frustrate the utilization of [minority-owned businesses] in the construction industry" and that they were "intentional, deliberate, willful and conducted in callous

disregard of KIA's rights to be free from non-discrimination based on race."  Am. Answ. ¶¶ 50, 53.

To state a § 1981 claim, Kia must allege the following elements: (1) that it is a member of a racial minority; (2) that the plaintiffs had the intent to discriminate on the basis of race; and (3) discrimination concerning one or more of the activities enumerated in the statute, here alleged to be the right to make and enforce contracts.  <u>Brown v. Phillip Morris, Inc.</u>, 250 F.3d 789, 797 (3d Cir. 2001).

The current standard for adequately pleading a claim was set out in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007).  Under <u>Twombly</u>, to properly plead a claim, a party's factual allegations must be enough to raise a right to relief above the speculative level.  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (citing <u>Twombly</u>, 127 S. Ct. at 1965).  The Supreme Court recently reaffirmed and clarified the <u>Twombly</u> standard in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (U.S. 2009).

<u>Iqbal</u> emphasized that, although a court must accept all factual allegations as true for purposes of deciding a motion to dismiss, this did not apply to legal conclusions or to "legal conclusions couched as factual allegations."  In <u>Twombly</u>, this meant that the Supreme Court was not required to accept as true the plaintiff's allegation that the defendants had entered into

an unlawful conspiracy to prevent competition, because this was only a legal conclusion.  Iqbal, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 555).  Twombly also held that a complaint must state a "plausible claim for relief to survive a motion to dismiss."  In Twombly, this meant that the plaintiff's allegation that the defendants had engaged in parallel conduct was not sufficient to state a claim of antitrust conspiracy because this allegation was "not only compatible with, but more likely explained by," lawful behavior and therefore did not "plausibly suggest" an unlawful agreement.  Iqbal, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 565-67).

In Iqbal, the Supreme Court applied the Twombly standard to a Bivens claim by a Pakistani Muslim alleging that high federal officials had knowingly approved policies after the September 11, 2001, terrorist attacks, under which, after his arrest on non-violent charges, he was placed in maximum security lock-down and subjected to beatings.  The Supreme Court clarified that the Twombly standard applied to discrimination claims.  It held that, although the plaintiff had alleged that the federal defendants knew of or condoned the allegedly unconstitutional actions taken against him, these allegations were legal conclusions that were not entitled to be assumed true.  It also found that the plaintiff's allegations that thousands of Muslim men had been arrested after September 11 and placed in highly

-5-

restrictive conditions of confinement, while consistent with the plaintiff's allegations of illegal discriminatory motives, were more plausibly explained by the defendants' legitimate interest in detaining those connected with the September 11 attacks. Because there was an "obvious alternative explanation" of the defendants actions, id. at 1951-52, the Supreme Court found the plaintiff had failed to allege sufficient facts to "nudge[ ] his claims of invidious discrimination across the line from conceivable to plausible," id., at 1950-51 (internal quotation omitted).

The Supreme Court's clarification of federal pleading standards in Twombly and Iqbal has raised the bar for claims to survive a motion to dismiss by emphasizing that a plaintiff cannot rely on legal conclusions or implausible inferences from factual allegations to state a claim. Measured against this clarified standard, Kia's amended counterclaim fails.

The amended counterclaim's allegations that the Carpenter's Union has a "longstanding pattern and practice" of discriminating against minorities and minority-owned businesses and the allegations that the plaintiffs' actions were intentional and motivated by racial animus and a desire to exclude minorities and minority-owned businesses from the construction industry are all legal conclusions that under Iqbal and Twombly are not entitled to be assumed to be true.

The factual allegations in the amended counterclaim concern actions by the plaintiffs to collect the payments they claim Kia owes them.  The amended counterclaim alleges that the plaintiffs took steps to make a claim against Kia's performance bond, sought to persuade a city agency to withhold payments to Kia, and demanded to audit Kia's books and records.  These actions are entirely consistent with a lawful attempt by the plaintiffs to collect unpaid CBA obligations that they are owed.  By themselves, these allegations are "not only compatible with, but more likely explained by," lawful behavior and therefore cannot "plausibly suggest" actionable wrongdoing.  Iqbal, 129 S. Ct. at 1950.  Kia's allegations that the plaintiffs took similar steps against another minority-owned business, W & W, are also entirely consistent with lawful actions by the plaintiffs to collect unpaid CBA payments.

Kia has attempted to plead sufficient additional facts to "nudge" its allegations of discrimination across the "line from conceivable to plausible" by alleging, on information and belief, that the plaintiffs do not make similar efforts to collect unpaid CBA obligations from non-minority-owed businesses.  Kia, however, offers no specific facts in support of the plaintiffs' alleged disparate treatment of minority and non-minority businesses.  In the absence of any more specific allegations identifying particular instances of disparate

-7-

treatment, these allegations are merely "legal conclusions couched as factual allegations," which under <u>Twombly</u> and <u>Iqbal</u> cannot be taken as true.

Kia's allegations that the Carpenter's Union refused to cooperate with the Mayor's Advisory Commission and has a "historical and present day antipathy" to racial minorities are also not enough to make Kia's discrimination claims plausible. Even if taken as true, these allegations are not probative to the question of whether the specific actions taken by the plaintiffs against Kia can be plausibly alleged to have been motivated by discrimination.

Like Kia's initial counterclaim, its amended counterclaim fails to contain sufficient factual allegations to make Kia's right to relief anything more than speculative. The amended counterclaim will therefore be dismissed.

An appropriate Order will be issued separately.